UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ATOMIC CAFE, INC., and JOHN MAHONEY, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-11927-IT |
| | * | |
| KYLE ROY, PETER ROY, COLD BREW | * | |
| VENTURES, LLC, and LEAN & LOCAL LLC | * | |
| d/b/a LEANBOX d/b/a GRIND or GRIND | * | |
| COFFEE, | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

TALWANI, D.J.

Before the court is Plaintiffs' Motion for Preliminary Injunction [#2]. In their Motion,

Plaintiffs seek relief based on claims of common law trademark infringement, trademark

infringement in violation of 15 U.S.C. § 1114, and misappropriation of trade secrets in violation

of Massachusetts General Laws ch. 93, § 42. For the reasons that follow, the relief Plaintiffs seek

based on their trademark claims is GRANTED in part and DENIED without prejudice in part.

The court will address Plaintiffs' claim for misappropriation of trade secrets in a separate order.

I.      Background[1]

        Plaintiff John Mahoney is the President of Plaintiff Atomic Cafe, Inc., a Massachusetts

coffee business. Compl. 4 [#1]. Atomic Cafe owns and operates retail cafes in several

Massachusetts locations, and a roasting, toll-roasting, and kegging facility in Salem,

Massachusetts. Compl. 4 [#1]. Atomic Cafe owns two registered trademarks related to the

---

[1] Paragraph 1 of Plaintiff John Mahoney's Affidavit in Support of the Motion for Preliminary
Injunction [#4] adopts the facts set forth in the Complaint [#1]. For purposes of the motion, the
court accepts as true the uncontroverted allegations in the complaint and uncontroverted
affidavits. Elrod v. Burns, 427 U.S. 347, 350 n.1 (1976).

Atomic Coffee Roasters brand. Compl. 4 [#1]; Opp. to Mot. for Prelim. Inj. ["Opp."] 6 n.21 [#15].

Defendants Kyle Roy and Peter Roy are co-founders of LeanBox, a company that provides food vending services to businesses. Compl. 6 [#1]. Grind or Grind Coffee ("Grind") is LeanBox's coffee business. Compl. 6 [#1]. Grind coffee products are offered in connection with LeanBox's vending machines and office supply services. Compl. 6 [#1].

In or around September 2016, the parties agreed to pursue a business venture together called "Cold Brew Ventures." Compl. 6-7 [#1]. On September 18, 2017, Peter Roy informed Mahoney that Defendants were no longer interested in pursuing the joint venture with him. Decl. of John Mahoney ["Mahoney Decl."] 6 [#4]. Mahoney "withdrew any permission Defendants had" to use the Trademarks "immediately following" Mahoney's removal from the venture. Pl.'s Mem. 6-7 [#3].

II.     Trademark Infringement

Plaintiffs contend that Defendants are no longer authorized to use the trademarks but have continued to do so. Specifically, Plaintiffs claim that Defendants have sold products, including stale products, labeled with the trademarks, and have displayed, and continue to display, Atomic Cafe's trademarks on at least some webpages and social media pages. Mahoney Decl. 7 [#4]; Decl. of Michael E. Strauss, Esq. ["Strauss Decl."] 1-6 [#16-1].

Defendants generally concede that they are no longer authorized to use the trademarks, but contend that they are authorized to sell products purchased for the express purpose of resale. They state further that after September 18, they "began discontinuing their use of Atomic's trademarks," and that they "no longer are using Atomic's trademarks in any way other than on products purchased for the express purpose of resale." Opp. 6 [#15].

A. *Likelihood of Success on the Merits*

To succeed on a claim of trademark infringement, Plaintiffs must demonstrate that they own a protectable mark, that Defendants' use of that mark is unauthorized, and that such use will likely cause consumer confusion. 15 U.S.C. § 1125; Borinquen Biscuit Corp. v. M.W. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006) ("Before a party can succeed in an infringement action, it must demonstrate that its mark merits protection and that the allegedly infringing use is likely to result in consumer confusion.").

The first element is satisfied. Registration of a mark on the Principal Register is "prima facie evidence of the validity of the mark and of the registration of the mark, the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(a). Defendants offer no evidence to rebut that prima facie showing.

The second element is also satisfied as to uses of the trademarks on Defendants' website and social media pages. Defendants do not dispute that they are no longer authorized to use the trademarks on these platforms, while Plaintiffs have come forward with evidence of Defendants' continued use of the trademark on these platforms after the termination of the parties' relationship. See Strauss Decl. 1-6 [#16-1].

The record is less clear as to the use of the trademarks on products offered for sale. At the hearing, Plaintiffs clarified that they were not seeking to enjoin Defendants' resale of prepackaged coffee beans, but that they did object to Defendants' use of the trademarks on coffee products, such as cold brew, that were produced by Defendants after the relationship was terminated. The record at this juncture does not demonstrate a likelihood that Defendants used, or are continuing to use, Plaintiffs' trademarks on products produced after the relationship was terminated.

The third element of whether Defendants' use of the mark creates consumer confusion is also satisfied. Defendants do not dispute Plaintiffs' contention that the unauthorized use of the trademarks on product for sale or in written or electronic material is likely to confuse customers into believing that Plaintiffs produce the cold brew products that Defendants sell, or that an affiliation or partnership between Defendants and Plaintiffs still exists. See Pl.'s Mem. 9 [#3].

In sum, Plaintiffs are likely to succeed on the merits of their trademark infringement claim that Defendants used the trademarks on their website and social media without authorization.

### B. *Likelihood of Irreparable Harm Absent Interim Relief*

"The [Supreme] Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Voice of the Arab World, Inc., 645 F.3d at 32 (quoting Weinberger v. Romero-Barceló, 456 U.S. 305, 312 (1982)); Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) ("In most cases . . . irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief."). In a trademark case, courts may presume irreparable harm where the plaintiff establishes a likelihood of success on the merits. See Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992) ("By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated. Hence, irreparable harm flows from an unlawful trademark infringement as a matter of law."); Keds Corp. v. Renee Intern. Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989). This presumption is consistent with Plaintiffs' argument that confusion from continuing

infringement will harm Plaintiffs' reputation for producing and selling high-quality cold brew product, business reputation, and customer goodwill. See Pl.'s Mem. 10 [#3].

### C. *Balance of the Equities*

The injury that Plaintiffs are likely to incur is likely to outweigh the harm that granting the injunctive relief would inflict on Defendants. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (U.S. 2008). Plaintiffs may face significant harm from consumer confusion about whether Defendants are in fact partnered with Plaintiffs. Defendants, on the other hand, claim that they have already sought to discontinue use of the trademarks, Opp. 6 [#15], and offer no argument that an injunction requiring them to discontinue use of the trademarks would impose any additional hardship.

### D. *Public Interest*

Given "the societal value of full disclosure and fair competition, together with the policy of the law to provide at least minimal protection to established trade names," the First Circuit has held that "[p]reventing consumer confusion is clearly in the public interest." Hypertherm, Inc. v. Precision Prods., Inc., 832 F.2d 697, 700 (1st Cir. 1987). As Plaintiffs' likelihood of succeeding on their trademark claims appears to be substantial, enjoining Defendants' infringement is in the public interest. See Commerce Bank & Trust Co. v. TD Banknorth, Inc., 554 F. Supp. 2d 77, 88 (D. Mass. 2008) ("[T]he public interest almost always favors granting otherwise appropriate injunctions." (quotation omitted)).

### III. Conclusion

For the foregoing reasons, Plaintiffs are entitled to a preliminary injunction enjoining Defendants' use of Plaintiffs' trademarks on Defendants' website and social media. Plaintiffs' request for further relief is denied without prejudice to a renewed motion including a showing of

a likelihood of success as to the claim that Defendants' are continuing to use Plaintiffs' trademarks on products produced after the termination of the parties' relationship.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1) Plaintiffs' Motion for Preliminary Injunction [#2] is GRANTED as to the use of the trademarks on all written and electronic material, and DENIED without prejudice as to retail product.

(2) Defendants and all those persons or entities in active concert or participation with them with notice of this order are hereby enjoined, pursuant to 15 U.S.C. § 1116, from directly or indirectly infringing Plaintiffs' trademarks through any electronic communications or creating any impression in any electronic platform that Defendants' products or services have any association, connection or affiliation with Plaintiffs.

IT IS SO ORDERED.

Date: October 26, 2017                              /s/ Indira Talwani
                                                    United States District Court