UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE ATOMIC CAFÉ, INC. and JOHN MAHONEY<br><br>Plaintiffs,<br><br>v.<br><br>KYLE ROY, PETER ROY, COLD BREW VENTURES, LLC, and LEAN & LOCAL, LLC, d/b/a LEANBOX and d/b/a GRIND Or GRIND COFFEE<br><br>Defendants. | ) | Civil Action No. 1:17-cv-11927-IT<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' ANSWER AND COUNTERCLAIMS**

The Defendants, Kyle Roy, Peter Roy, Cold Brew Ventures, LLC, and Lean & Local LLC d/b/a LeanBox and d/b/a Grind or Grind Coffee (hereinafter referred to as "Defendants"), hereby respond to the correspondingly numbered paragraphs of the Amended Complaint of the Plaintiffs, The Atomic Café, Inc. and John Mahoney (hereinafter referred to as the "Plaintiffs")

**GENERAL RESPONSE**

Defendants do not waive any of their rights, defenses, or privileges under any applicable law, and reserve the right to supplement or amend this answer to the claims as discovery and this proceeding progress and more information about the allegations contained in the Plaintiffs' Amended Complaint and the alleged basis for said allegations becomes available.

**SPECIFIC RESPONSES**

**Preliminary Statement**

1. Paragraph 1 does not contain any allegations and does not require a response.



#2853067 107891/0

2. Defendants admit that John Mahoney ("Mr. Mahoney") has some experience, knowledge, goodwill and reputation in the coffee industry and that he assisted in developing a new cold brew product manufacturing facility. Defendants deny the remaining allegations contained in Paragraph 2 of the Amended Complaint.

3. Defendants admit that it was contemplated that if a binding agreement was consummated, Mr. Mahoney would receive a 25% equity stake in Cold Brew Ventures, LLC ("CBV") and an employment contract. Defendants deny the remaining allegations contained in Paragraph 3 of the Amended Complaint, except they are without sufficient information to admit or deny the allegations as to Plaintiff's alleged conduct in the second sentence of this paragraph.

4. Defendants deny the allegations of Paragraph 4 of the Amended Complaint.

**Parties**

5. Defendants are without sufficient information to admit or deny the allegations in Paragraph 5 of the Amended Complaint.

6. Defendants are without sufficient information to admit or deny the allegations in Paragraph 6 of the Amended Complaint.

7. Defendants admit that Kyle Roy is an individual and deny the remaining allegations contained in Paragraph 7 of the Amended Complaint.

8. Defendants admit the allegations contained in Paragraph 8 of the Amended Complaint.

9. Defendants admit the allegations contained in Paragraph 9 of the Amended Complaint.

10. Defendants admit the allegations contained in Paragraph 10 of the Amended Complaint.

11. Defendants admit the allegations contained in Paragraph 11 of the Amended Complaint.

**Jurisdiction and Venue**

12. Paragraph 12 of the Amended Complaint contains a legal conclusion and does not require a response.

13. Paragraph 13 of the Amended Complaint contains a legal conclusion and does not require a response.

14. Paragraph 14 of the Amended Complaint contains a legal conclusion and does not require a response.

15. Paragraph 15 of the Amended Complaint contains a legal conclusion and does not require a response.

16. Paragraph 16 of the Amended Complaint contains a legal conclusion and does not require a response.

**Facts**

17. Defendants are without sufficient information to admit or deny the allegations in Paragraph 17 of the Amended Complaint.

18. Defendants are without sufficient information to admit or deny the allegations in Paragraph 18 of the Amended Complaint.

19. Defendants are without sufficient information to admit or deny the allegations in Paragraph 19 of the Amended Complaint.

20. Defendants are without sufficient information to admit or deny the allegations in Paragraph 20 of the Amended Complaint.

21. Defendants deny the allegations in the first sentence of Paragraph 21. Defendants are without sufficient information to admit or deny the allegations in the second sentence of Paragraph 21 of the Complaint.

22. Defendants deny the allegations in Paragraph 22 of the Amended Complaint.

23. Defendants deny the allegations in Paragraph 23 of the Amended Complaint.

24. Defendants deny the allegations in Paragraph 24 of the Amended Complaint.

25. Defendants deny the allegations in Paragraph 25 of the Amended Complaint.

26. Defendants are without sufficient information to admit or deny the allegations in Paragraph 26 of the Amended Complaint.

27. Defendants admit the allegation in Paragraph 27 of the Amended Complaint.

28. Defendants admit that "Grind" is a brand name Lean and Local, LLC d/b/a "LeanBox" uses for its coffee-related services and deny the remaining allegations in the first and second sentences of Paragraph 28 of the Amended Complaint. Defendants are without sufficient information to admit or deny the allegations in the last sentence of Paragraph 28 of the Amended Complaint.

## **The Cold Brew Venture**

29. Defendants admit the allegations in Paragraph 29 of the Amended Complaint.

30. Defendants deny the allegations in Paragraph 30 of the Amended Complaint.

31. Defendants deny the allegations in Paragraph 31 of the Amended Complaint.

32. Defendants admit that LeanBox, on the one hand and Plaintiff's on the other hand, discussed a potential joint venture that would involve operating a facility to manufacture, distribute and sell cold brew products on a larger scale than Plaintiffs were capable of doing and deny the remaining allegations of Paragraph 32 of the Amended Complaint.

33. Defendants admit that they discussed that a potential joint venture might result in the ability to make $10-$12 million in revenue in five years that, if it did, they might then try to sell such a venture for five-six times revenue. Defendants deny the remaining allegations in Paragraph 33 of the Complaint.

34. Defendants deny the allegations in Paragraph 34 of the Amended Complaint.

35. Defendants deny the allegations in Paragraph 35 of the Amended Complaint.

36. Defendants deny the allegations in Paragraph 36 of the Amended Complaint.

37. Defendants admit that Mr. Mahoney worked with the team that designed and configured the Wilmington Facility and that some equipment in the facility belonged to Plaintiffs. Defendants deny the remaining allegations in Paragraph 37 of the Amended Complaint.

38. Defendants deny the allegations in Paragraph 38 of the Amended Complaint.

39. Defendants are without sufficient information to admit or deny the allegations in Paragraph 39 of the Amended Complaint.

40. Defendants are without sufficient information to admit or deny the allegations in Paragraph 40 of the Amended Complaint.

41. Defendants admit that Mr. Mahoney worked with Bianka Legrand and are without sufficient information to admit or deny the remaining allegations in Paragraph 41 of the Amended Complaint.

42. Defendants admit that the license for the Wilmington Facility was issued. Defendants are without sufficient information to admit or deny the allegations in the first sentence of Paragraph 42 of the Amended Complaint and they refer to the license, which is a document that speaks for itself. The last two sentences of Paragraph 42 of the Amended Complaint also refer to the license, which is a document that speaks for itself.

43. Defendants are without sufficient information to admit or deny the allegations in Paragraph 43 of the Amended Complaint.

44. Paragraph 44 of the Amended Complaint refers to documents that speak for themselves and no answer is required.

45. Paragraph 45 of the Amended Complaint refers to documents that speak for themselves and no answer is required.

46. Defendants deny the allegations in Paragraph 46 of the Amended Complaint.

47. Defendants deny the allegations in Paragraph 47 of the Amended Complaint.

48. Defendants deny the allegations in Paragraph 48 of the Amended Complaint.

49. Paragraph 49 of the Amended Complaint refers to documents that speak for themselves and no answer is required.

50. Defendants deny the allegations in Paragraph 50 of the Amended Complaint.

51. Defendants deny the allegations in Paragraph 51 of the Amended Complaint.

52. Defendants admit the information in Paragraph 52 of the Amended Complaint.

53. Defendants deny the allegations in Paragraph 53 a-c of the Amended Complaint.

54. Defendants are without sufficient information to admit or deny the allegations in Paragraph 54 of the Amended Complaint.

55. Defendants are without sufficient information to admit or deny the allegations in Paragraph 55 of the Amended Complaint.

56. Defendants deny the allegations in Paragraph 56 of the Amended Complaint.

57. Defendants deny the allegations of Paragraph 57 of the Amended Complaint.

58. Defendants admit that they continue to contact certain business people introduced to them by Mr. Mahoney and deny the remaining allegations in Paragraph 58 of the Amended Complaint.

59. Defendants are without sufficient information to admit or deny the allegations in the first sentence of Paragraph 59 of the Amended Complaint. Defendants deny the allegations in the second sentence of Paragraph 59 of the Amended Complaint.

60. Defendants deny the allegations in Paragraph 60 of the Amended Complaint.

61. Defendants deny the allegations of Paragraph 61 of the Amended Complaint.

62. The allegations in Paragraph 62 refer to a web site and document which speaks for themselves and no answer is required.

63. Defendants deny the allegations in the first sentence of Paragraph 63 of the Amended Complaint. The allegations in the second sentence of Paragraph 63 refer to a web site which speaks for itself and no answer is required.

64. Defendants deny the allegations in Paragraph 64 of the Amended Complaint.

65. Defendants are without sufficient information to admit or deny the allegations in Paragraph 65 of the Amended Complaint.

66. Defendants deny the allegations of Paragraph 66 of the Amended Complaint.

67. Defendants deny the allegations in Paragraph 67 of the Amended Complaint.

68. Defendants deny the allegations of Paragraph 68 of the Amended Complaint.

69. Defendants are without sufficient information to admit or deny the allegations in Paragraph 69 of the Amended Complaint.

70. Defendants admit that Kyle Roy circulated the document attached as Exhibit 6 to the Amended Complaint, and it speaks for itself. Defendants deny the remaining allegations in Paragraph 70 of the Amended Complaint.

71. Defendants deny the allegations of Paragraph 71 of the Amended Complaint.

72. To the extent the allegations in Paragraph 72 refer to the Org. Chart, that documents speaks for itself and no answer is required. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 72 of the Amended Complaint.

73. Defendants are without sufficient information to admit or deny the allegations in Paragraph 73 of the Complaint.

74. Defendants admit that LeanBox sought to use a portion of the Wilmington Facility for its business and deny the remaining allegations of Paragraph 74 of the Amended Complaint.

75. Paragraph 75 refers to a document that speaks for itself and no answer is required.

76. Defendants admit the allegations of Paragraph 76 of the Amended Complaint.

77. Defendants are without sufficient information to admit or deny the allegations in the first sentence of Paragraph 77 of the Amended Complaint. Defendants deny the remaining allegations in Paragraph 77 of the Amended Complaint.

78. Defendants deny the allegations in Paragraph 78 of the Amended Complaint.

79. Defendants admit that Peter Roy sent to Mr. Mahoney the email attached as Exhibit 7 to the Amended Complaint, which is a document that speaks for itself, and no further answer to the allegations in the first sentence of Paragraph 79 is required. Defendants deny the allegations in the second sentence of paragraph 79 of the Amended Complaint. Defendants admit that some of CBV's customers were introduced to CBV by Mr. Mahoney. The remainder of the last sentence

of Paragraph 79 of the Amended Complaint refers to the email, which is a document that speaks for itself.

80. Defendants admit that there were further discussions between Peter Roy and Mr. Mahoney and deny the remaining allegations in paragraph 80 of the Amended Complaint.

81. Defendants deny the allegations of Paragraph 81 of the Amended Complaint.

82. Denied, except that Defendants admit that they had discussed with people other than Mr. Mahoney potentially becoming equity holders in CBV.

83. Defendants deny the allegations of Paragraph 83 of the Amended Complaint.

## CAUSES OF ACTION

### Count I
### (Trademark Infringement, Lanham Act 15 U.S.C. § 1114)

84. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

85. Paragraph 85 of the Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 85 asserts allegations of fact, Defendants are without sufficient information to admit or deny such allegations.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Paragraph 90 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 90 asserts allegations of fact, Defendants are without sufficient information to admit or deny such allegations.

**Count II**
**(Unfair Competition and False Designation of Origin, Lanham Act 15 U.S.C. § 1125(a))**

91. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

92. Denied.

93. Paragraph 93 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 93 asserts allegations of fact, Defendants deny such allegations.

94. Denied.

95. Denied.

96. Paragraph 96 of the Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 96 asserts allegations of fact, Defendants deny such allegations.

**Count III**
**(Common Law Trademark Infringement)**

97. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

98. Paragraph 98 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 98 asserts allegations of fact, Defendants are without sufficient information to admit or deny such allegations.

99. Denied.

100. Denied.

101. Denied.

102. Paragraph 102 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 102 asserts allegations of fact, Defendants deny such allegations.

103. Denied

104. Paragraph 104 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 104 asserts allegations of fact, Defendants deny such allegations.

**Count IV**
**(Taking/Misappropriation of trade Secrets, Mass. Gen. Laws. Ch. 93, §42)**

105. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

106. Paragraph 106 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 106 asserts allegations of fact, Defendants deny such allegations.

107. Denied.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

**Count V**
**(Taking/Misappropriation of trade Secrets**
**Defend Trade Secrets Act – 18 U.S.C. §1836(b)(1))**

115. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

116. Paragraph 116 of the Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 116 asserts allegations of fact, Defendants deny such allegations.

117. Defendants are without sufficient information to admit or deny the allegations in the first sentence of Paragraph 117 of the Complaint.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Denied.

125. Denied.

**Count VI**
**(Breach of Actual or Implied Contract)**

126. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

127. Denied.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Paragraph 132 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 132 asserts allegations of fact, Defendants deny such allegations.

**Count VII**
**Promissory Estoppel**

133. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

134. Denied.

135. Denied.

136. Denied.

137. Denied.

138. Paragraph 138 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 138 asserts allegations of fact, Defendants deny such allegations.

**Count VIII**
**Violation of Mass. G.L. c. 93A**

139. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

140. Admitted.

141. Denied.

142. Denied.

143. Denied.

144. Admitted.

145. Admitted.

146. Denied.

147. Denied.

148. Admitted.

149. Paragraph 149 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 149 asserts allegations of fact, Defendants deny such allegations.

**Count IX**
**Unjust Enrichment**

150. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

151. Denied.

152. Denied.

153. Denied.

154. Denied.

155. Paragraph 155 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 155 asserts allegations of fact, Defendants deny such allegations.

**Count X**
**Breach of the Covenant of Good faith and Fair Dealing**

156. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

157. Paragraph 157 of the Amended Complaint contains a legal conclusion and does not require a response.

158. Denied.

159. Paragraph 159 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 159 asserts allegations of fact, Defendants deny such allegations.

**Count XI**
**Fraudulent inducement**

160. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

161. Denied.

162. Denied.

163. Denied.

164. Denied.

165. Denied.

166. Paragraph 166 of the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 166 asserts allegations of fact, Defendants deny such allegations.

**Count XII**
**Conversion**

167. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

168. Admitted.

169. Admitted.

170. Denied.

171. Paragraph 171, off the Amended Complaint contains a legal conclusion and does not require a response. To the extent Paragraph 171 asserts allegations of fact, Defendants admit plaintiffs are entitled to return of their property, and, in further answering, Defendants state that plaintiffs' property has been returned. Defendants deny Plaintiffs may recover damages, costs or attorneys' fees.

**<u>Count XIII</u>**
**Replevin**

172. Defendants incorporate by reference their responses to the prior Paragraphs of the Amended Complaint as if separately and fully set forth herein.

173. Admitted that Plaintiffs are entitled to possession of the equipment and personal property they own and they contributed to the Wilmington Facility. Denied that Plaintiffs are entitled to possession of any equipment and personal property contributed to the Wilmington Facility which they did not own.

174. Admitted that some of the equipment and property has a value greater than twenty dollars.

175. Denied that Defendants are detaining any of the Plaintiffs' property against the Plaintiffs' right of possession. In further answering, Defendants state that plaintiffs' property has been returned.

176. Admitted that Plaintiffs are entitled to the return of their property and, in further answering, Defendants state that plaintiffs' property has been returned. Defendants deny Plaintiffs may recover interest, costs or attorneys' fees.

**PRAYER FOR RELIEF**

Paragraphs (A) through (G) are requests to the Court and do not require a response. However, Defendants respectfully suggest that Plaintiffs are not entitled to any of the requested relief.

**JURY DEMAND**

Plaintiffs' request for a jury trial does not include any factual allegations to which a response is required by Defendants. In addition, Defendants demand a trial by jury on all issues so triable.

**DEFENDANTS' AFFIRMATIVE DEFENSES**

Defendants assert the following defenses to the Amended Complaint and specifically reserve the right to raise additional defenses as they become known through further investigation and discovery. Nothing herein shall be construed as an admission or acknowledgment that Defendants bear the burden of proof as to any of the following defenses.

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiffs have failed to identify any legal cognizable trade secret as required to state a claim for trade secret misappropriation.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred in whole or in part by their own conduct and they have no right of recovery against Defendants.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' claim for Conversion (Count XII) is moot because Defendants have reimbursed or returned to Plaintiffs the equipment or property that Plaintiffs alleged to have contributed to the Wilmington Facility.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claim for Replevin (Count XIII) is moot because Defendants have reimbursed or returned to Plaintiffs the equipment or property that Plaintiffs alleged to have contributed to the Wilmington Facility.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs have suffered no harm, monetary damage or loss as a result of any wrongful conduct of Defendants.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' harm, if any, is the result of their own conduct for which Defendants are not responsible.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs are not entitled to injunctive relief because any injury to Plaintiffs is not immediate or irreparable, Plaintiffs would have an adequate remedy at law, and the balance of hardships and the public interest do not favor injunctive relief. Further, Plaintiffs have failed to plead the requisite elements for such relief.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred in whole or in part under the doctrine of equitable estoppel.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiffs failed to send Defendants a 30 Day Demand Letter as required by M.G.L. c. 93A.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred by waiver.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' activity is permitted by an express or implied license.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims for equitable relief are barred by their own unclean hands because, among other things, their material misrepresentations made to the Defendants.

**FIFTHTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred because Plaintiffs have no protectable trade secrets, confidential business information, or customer goodwill.

**SIXTHTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred in whole or in part by their failure to mitigate their damages.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims under Mass. Gen. Laws c. 93A are barred because the alleged actions did not take place in trade or commerce since, among other things, the alleged acts took place in the course of an alleged proposed or actual joint venture.

**EIGHTTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs alleged marks and logos at issue are not distinctive and have not acquired secondary meaning.

**RESERVATION OF RIGHTS**

Defendant reserves its rights to amend this Answer or to amend or add further defenses that may become known after the filing of this pleading.

**DEFENDANTS' PRAYERS FOR RELIEF**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any of the relief demanded in Paragraphs (A) – (G) of the Prayers for Relief section in the Amended Complaint and Defendants request that the Court enter judgment:

(a) Finding, declaring, and adjudging in favor of Defendants, and against Plaintiffs, and dismissing with prejudice all claims of Plaintiffs against Defendants;

(b) Finding, declaring and adjudging that Plaintiffs have no trade secrets, and that Defendants have not misappropriated any trade secrets;

(c) Finding, declaring and adjudging that Plaintiffs are not entitled to permanent injunctive relief for infringement of any trademarks; and

(d) Granting such other and further relief as this Court may deem just and proper.

**COUNTERCLAIMS**

**Parties**

1. Counterclaim plaintiff Lean & Local, LLC, d/b/a Grind or Grind Coffee (collectively, "LeanBox") is a Massachusetts limited liability company, with a principal place of business at 60 Massachusetts Avenue, Boston, Massachusetts.

2. Counterclaim plaintiff Cold Brew Ventures, LLC ("CBV"), is a Delaware limited liability company, with a principal place of business at 10 Jewell Drive, Wilmington, Massachusetts 01887.

3. Kyle Roy (hereinafter "Roy") and Peter Roy are principals of LeanBox and CBV.

4. Counterclaim defendant The Atomic Café, Inc. ("Atomic") is a Massachusetts corporation, with a principal place of business at 45 Mason Street, Unit 1, Salem, Massachusetts 01970.

5. Counterclaim defendant John Mahoney ("Mahoney") is an individual residing at of 8 Castle Road, Salem, Massachusetts 01970. He is the President of and 50% owner of Atomic.

**Jurisdiction & Venue**

6. This Court has supplemental jurisdiction over the claims of LeanBox, CVB and Roy against Mahoney and Atomic pursuant to 28 U.S.C. Section 1367(a) because these claims are so related to purported claims under federal law asserted by Mahoney and Atomic that they form the same case or controversy and derive from a common nucleus of operative facts.

7. The Court possesses personal jurisdiction over Mahoney and Atomic as they are residents of the Commonwealth of Massachusetts and conduct business in, and maintain the necessary contacts within, the Commonwealth of Massachusetts.

8. Venue is proper in this District under 28 U.S.C. Sections 1391(b) and (c) because this is the judicial district where (i) a substantial amount of events or omissions giving rise the claims occurred and (ii) where Mahoney and Atomic reside and conduct business.

**Facts Common to All Counts**

9. Mahoney formerly co-owned and operated three retail coffee shops in Beverly, Marblehead and Newburyport and presently operates a small artisan/retail scale coffee roasting and kegging facility in Salem.

10. In or around February 2016, Roy and Mahoney were introduced through a mutual contact at Mahoney's coffee shop in Beverly, Massachusetts. At that time, LeanBox sold cold brew coffee, among other food and beverage items, to customers and used two vendors to source the cold brew. LeanBox did not roast or manufacture cold brew coffee. Similarly, in February 2016 niether Atomic nor Mahoney manufactured or sold wholesale cold brew coffee.

11. After several conversations with Mahoney in early 2016, LeanBox engaged Mahoney and Atomic to serve as vendors to supply cold brew coffee and agreed that LeanBox would sell Atomic's kegged cold brew and nitro cold brew, which would be brewed at Atomic's Salem workshop and labeled and sold by LeanBox as Grind coffee.

12. Atomic began manufacturing cold brew coffee products for LeanBox, in a tiny corner room attached to its approximately 1000 square foot Salem workshop, but given its very limited capacity, Mahoney asked LeanBox to provide funding to Atomic so that it could expand its brewing capacity in this corner room in order to meet LeanBox's growing sales. LeanBox agreed to provide funding and contributed $50,000 to $60,000 to increase Atomic's brewing capacity.

13. Between July and August 2016, Roy continued to research other cold brew vendors and co-pack options to source cold brew for plaintiffs-in-counterclaim.

14. LeanBox was regularly purchasing kegged cold brew from Atomic at above-market rates for re-sale to its customers. In addition to kegged cold brew coffee, bottled cold brew coffee was also popular with consumers and LeanBox wanted to expand its market to include it as an option for customers. Mahoney misrepresented that he was capable of bottling cold brew and could meet LeanBox's needs in this regard. In reliance on Mahoney's misrepresentation, LeanBox placed an order with Atomic for bottled cold brew.

15. On August 24, 2016, Mr. Mahoney ran the first production of Atomic cold brew in glass heated pasteurized bottles and sold them to LeanBox. Due to poor taste, however, LeanBox had to throw out the entire production and was not reimbursed for the cost.

16. In the fall of 2016, Roy told Mahoney that LeanBox was considering two options moving forward: (1) building out its own commercial facility to roast coffee and make cold brew

(and other beverages) for its customers with an anticipated brewing capacity of approximately 400-800 gallons per batch; or (2) partnering with a large-scale brewer to brew for LeanBox.

17. Mahoney convinced Roy that he had the requisite skills to (1) assist LeanBox with the build out of a new facility; (2) to operate the facility; and (3) to meet LeanBox's brewing demands for both kegged and bottled cold brew. As an incentive for LeanBox, Mahoney offered to sell his Atomic wholesale roasting brand to LeanBox at well-below the market price.

18. Mahoney represented to Roy that (1) he had extensive knowledge of large-scale roasting, brewing, kegging and bottling cold brew coffee; (2) he had experience sourcing the requisite roasting, brewing, kegging and bottling equipment; building and operating a facility; and producing quality product; (3) he had the skills and ability to operate a large-scale commercial facility and provide customer service to clients. All of his representations were false.

19. In fact, prior to 2017, Mahoney had never managed or performed a large-scale roasting operation, never managed or performed a large-scale commercial brewing operation, and never managed or preformed a large-scale kegging or bottling operation.

20. In addition, despite representations to the contrary, Mahoney was not knowledgeable in the design or equipment required to build out a large-scale commercial brewing facility.

21. In reliance upon Mahoney's false representations, LeanBox continued purchasing Atomic coffee and cold brew from Mahoney at above market prices and discussed with Mahoney a potential business deal in which: (1) LeanBox would purchase Atomic at below the market price; (2) Mahoney would then work in LeanBox's roasting and brewing facility which would be a separate business; and (3) Mahoney would receive up to 25% of the equity in a to-be-formed enterprise, provided that he sell his Atomic brand.

22. While such an arrangement was being discussed, LeanBox continued to purchase Atomic coffee and cold brew from Mahoney above market rates. Mahoney continued to roast coffee and make cold brew out of his backroom workshop and Atomic invoiced LeanBox for its orders and was paid for those invoices.

23. In November 2016, LeanBox hired and paid a designer to prepare initial plans for the build-out of a new production facility in Wilmington, Massachusetts (the "Wilmington Facility"). LeanBox also hired and paid a consultant to assist with obtaining the requisite state and federal licenses to operate the Wilmington Facility. The License for the Wilmington Facility was issued on June 20, 2017 and the facility was completed in or around July 2017.

24. Once the Willington facility was operational, Mahoney moved his brewing operation to the Wilmington Facility and used the Facility to brew Atomic cold brew coffee and serve as LeanBox's cold brew vendor. The cold brew coffee purchased was sold to LeanBox customers under the LeanBox brand "Grind." Atomic continued to invoice LeanBox for its orders and LeanBox continued to pay above-market prices for the bottled and kegged cold brew.

25. Mahoney also used the Wilmington Facility to brew cold brew for LeanBox's co-pack customers and invoiced LeanBox for the kegged cold brew at above market rates.

26. Upon information and belief, Mahoney also used the Wilmington Facility to brew cold brew to sell in his Atomic retail locations.

27. In June 2017, LeanBox signed its first large-scale coffee deal with Bluestone Lane Roasting, LLC ("Bluestone") worth approximately $2,500,000 in revenue annually. The Bluestone contract gave LeanBox less than ninety days to get its kegging production up and running. Additionally, the contract guaranteed that if Bluestone terminated the contract early, it

would be responsible to pay for approximately $300,000 worth of equipment, which LeanBox was installing to service the Bluestone account.

28. In the spring and summer of 2017, LeanBox's line employees made several complaints to senior management about Mahoney and Atomics' failure to fill orders on a timely basis and inability to meet brewing quantity demands. As it turned out, despite his representations, Mahoney was incapable of getting the Wilmington Facility up and running to any extent. He did not know how to operate the bottling equipment, the mash ton tank, or the glycol run, and purchased several pieces of equipment that were incompatible with the operation.

29. In light of this, LeanBox became concerned about whether Mahoney was the right person to handle the roasting and brewing operation at the Wilmington Facility and hired a full-time brewer to correct Mahoney's mistakes and to assist with getting the Wilmington Facility up and running.

30. In July 2017, LeanBox received a significant order from Roche Brothers for High Pressure Pasteurization ("HPP") cold brew coffee. In an attempt to fill the order, Mahoney ran his HPP cold brew for Roche Brothers out of the Wilmington Facility. It was a disaster. LeanBox was forced to recall the product after it was discovered that the bottles contained "floating particulates," possibly mold. LeanBox bore the full cost of the recall.

31. On August 14, 2017, with the help of LeanBox's new brewing assistant, Brian Fines, Mahoney completed his second-run of HPP cold brew bottles for Roche Bros. This time, production was late and resulted in LeanBox employees hand labeling hundreds of bottles and delivering them throughout the night to Roche Brothers facilities.

32. In August 2017, LeanBox secured the InHouse Coffee (New England Coffee) account. Almost immediately, InHouse Coffee complained about the quality of the product, specifically, that the cold brew was not filtered correctly.

33. In the fall of 2017, Roy contacted several clients and learned that each of its three largest accounts (New England Coffee, Excellence Coffee and JP Licks) were extremely unhappy with the coffee products. Complaints included but were not limited to problems with poor coffee quality caused by Mahoney's inability to produce a quality cold brew product at any scale and in a timely manner.

34. As a result of the incompetence of Mahoney and Atomic, New England Coffee did not sign a contract with LeanBox, which cost LeanBox in excess of $500,000 in annual revenues. For these same reasons, LeanBox was forced to refund Excellence Coffee for product that was not fit for consumption.

35. In addition in September 2017, due to Mahoney's incompetence, LeanBox missed its delivery deadline to Bluestone and Bluestone terminated its contract costing LeanBox an account worth $2,500,000 in annual revenue.

36. Shortly thereafter, LeanBox terminated its business relationship with Mahoney and Atomic. Almost immediately after the business relationship between LeanBox and Mahoney was terminated, Mahoney contacted a number of LeanBox accounts, including but not limited to Roche Bros. and LogMeIn, with the intention of causing them to terminate their relationship with LeanBox. As part of that effort, Mahoney contacted these clients to inform them about the break in his relationship with LeanBox and misrepresented that there were quality and health concerns with LeanBox's cold brew products.

37. More specifically, Mahoney knew that LeanBox secured a second contract with Roche Bros. whereby LeanBox would source the hot and cold brew coffee for all of Roche Bros.' in-store cafés, which were in the process of being built at each Roche Bros. location. After LeanBox terminated its relationship with Mahoney, Mahoney contacted Roche Bros. and intentionally misrepresented that LeanBox was not licensed to make cold brew, operated an unsafe and unsanitary brewing facility, and acted in bad faith in terminating its relationship with him.

38. As a direct result of Mahoney's disparaging remarks about LeanBox, Roche Bros. rescinded its contract with LeanBox and instead entered into a contract with Mahoney costing LeanBox $1,800,000 in lost revenue.

39. Similarly, upon information and belief, after LeanBox terminated its relationship with Mahoney, Mahoney induced a friend/contact at LogMeIn to make disparaging comments internally about LeanBox and its cold brew.

40. As a direct result of Mahoney's inducement and the resulting disparaging comments about LeanBox, LogMeIn cancelled its contract with LeanBox costing LeanBox $50,000 in lost revenue.

**<u>COUNT ONE</u>**

**INTENTIONAL MISREPRESENTATION**
**(Lean & Local LLC d/b/a LeanBox v. John Mahoney)**

41. Counterclaim plaintiff LeanBox repeats the allegations of paragraphs 1 through 40 of this Counterclaim and incorporates them by reference as if fully set forth herein.

42. Mahoney made intentional misrepresentations to LeanBox with regard to his experience performing large-scale commercial roasting, brewing and bottling of cold brew coffee.

43. Mahoney made intentional misrepresentations to LeanBox with regard to his knowledge and experience building, equipping and operating a large-scale commercial brewing facility.

44. Mahoney made intentional misrepresentations to LeanBox with regard to his knowledge and experience operating a large-scale commercial brewing facility.

45. Mahoney's intentional misrepresentations were material to LeanBox's decision to allow him to operate the roasting and brewing operation at the Wilmington Facility and use the Facility to brew Atomic cold brew coffee and serve as LeanBox's cold brew vendor.

46. LeanBox relied on Mahoney's intentional misrepresentations in placing him in charge of the cold brew process at the Wilmington facility and in purchasing Atomic Coffee from Atomic that had been brewed at the Wilmington facility.

47. The intentional representations made by Mahoney concerning his knowledge, experience and ability concerning cold brew were false when made and were known by him to be untrue.

48. As a direct and proximate result of these intentional misrepresentations, and as a direct and proximate result of LeanBox's reliance on them, LeanBox has been damaged.

## <u>COUNT TWO</u>

**NEGLIGENT MISREPRESENTATION**
**(Lean & Local LLC d/b/a LeanBox v. John Mahoney)**

49. Counterclaim plaintiff LeanBox repeats the allegations of paragraphs 1 through 48 of this Counterclaim and incorporates them by reference as if fully set forth herein.

50. Mahoney made negligent misrepresentations to LeanBox with regard to his experience performing large-scale commercial roasting, brewing and bottling of cold brew coffee.

51. Mahoney made negligent misrepresentations to LeanBox with regard to his knowledge and experience building, equipping and operating a large-scale commercial brewing facility.

52. Mahoney made negligent misrepresentations to LeanBox with regard to his knowledge and experience operating a large-scale commercial brewing facility.

53. Mahoney's negligent misrepresentations were material to LeanBox's decision to allow him to brew cold brew coffee at the Wilmington Facility and to serve as LeanBox's cold brew vendor.

54. LeanBox relied on Mahoney's negligent misrepresentations in allowing him to operate the Wilmington Facility and in purchasing Atomic Coffee from Atomic that had been brewed at the Wilmington facility.

55. The negligent representations made by Mahoney concerning his knowledge, experience and ability concerning cold brew were untrue when made and Mahoney knew or should have known they were untrue.

56. As a direct and proximate result of these negligent misrepresentations, and as a direct and proximate result of LeanBox's reliance on them, LeanBox has been damaged.

## COUNT THREE

**BREACH OF IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY**
**(Lean & Local LLC d/b/a LeanBox v. Atomic Café, Inc.)**

57. Counterclaim plaintiff LeanBox repeat the allegations of paragraphs 1 through 56 of this Counterclaim and incorporates them by reference as if fully set forth herein.

58. Atomic is a "merchant" under the Uniform Commercial Code in that it is engaged in the business of manufacturing, processing and selling cold brew coffee for human consumption.

59. Atomic manufactured, processed and sold cold brew coffee to LeanBox.

60. The cold brew coffee sold by Atomic to LeanBox is a "good" under the Uniform Commercial Code.

61. By its manufacturing, processing, preparation and selling of is cold brew coffee to LeanBox, Atomic impliedly warranted that its cold brew coffee was of merchantable quality, fit for human consumption, was safe, wholesome, and not otherwise contaminated or defective.

62. At the time when LeanBox purchased cold brew coffee from Atomic, the cold brewed coffee had not been properly brewed, regulated and/or monitored by Atomic and/or its agent, Mr. Mahoney, such that it was not fit and safe for human consumption or would otherwise pass without objection in the trade or industry.

63. LeanBox seasonably rejected the product and so notified Atomic.

64. Atomic has failed to reimburse LeanBox for its costs associated with the purchase of same.

65. Atomic breached the implied warranty of merchantability under the Uniform Commercial Code and LeanBox has been damaged by Atomic's failure to supply and deliver cold brew coffee safe for human consumption.

66. LeanBox has sustained additional consequential damages in an as yet undetermined amount flowing from the aforementioned breach of warranty

## COUNT FOUR

**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS (Lean & Local LLC d/b/a LeanBox v. John Mahoney)**

67. Counterclaim plaintiff LeanBox repeat the allegations of paragraphs 1 through 66 of this Counterclaim and incorporates them by reference as if fully set forth herein.

68. Mahoney intentionally interfered with LeanBox's advantageous business relationships with Roche Bros. and LogMeIn, among others, by making false and defamatory statements that they knew to be false, or without concern for the truth or falsity of such statements.

69. Mahoney knew or should have known that his interference and defamatory statements about LeanBox would cause LeanBox harm economically and to its reputation and hold LeanBox up to contempt, hatred, scorn, and/or ridicule and impaired standing in the community thereby affecting its current and contemplated business relationships.

70. Mahoney made such statements for the purpose of depriving LeanBox of the prospect of entering into advantageous and/or contractual relationships with its customers.

71. Mahoney made such statements with improper motive and with a malicious, spiteful purpose in retaliation for LeanBox terminating its business relationship with Mahoney.

72. The intentional interference by Mahoney caused LeanBox damage to its business reputation, economic damage in the form of lost clients, prospective customer relationships and irreparable harm.

**COUNT FIVE**

**INJURIOUS FALSEHOOD/COMMERCIAL DISPARAGEMENT**
**(Lean & Local LLC d/b/a LeanBox v. John Mahoney)**

73. Counterclaim plaintiff LeanBox repeat the allegations of paragraphs 1 through 72 of this Counterclaim and incorporate them by reference as if fully set forth herein.

74. As described in paragraphs 34 to 38 above, Mahoney made false statements harmful to the interests of LeanBox.

75. Mahoney intended for the statements to result in harm to the interests of LeanBox and to have a pecuniary value, or Mahoney recognized or should have recognized that the

statements were likely to do so. Mahoney knew that the statements were false or acted in reckless disregard of their truth or falsity.

76. The false and injurious statements of Mahoney have caused LeanBox pecuniary damage, harm to its reputation and irreparable harm.

**COUNT SIX**

**NEGLIGENCE**
**(Lean & Local LLC d/b/a LeanBox v. John Mahoney)**

77. Counterclaim plaintiff LeanBox repeat the allegations of paragraphs 1 through 76 of this counterclaim and incorporate them by reference as if fully set forth herein.

78. Mahoney negligently operated the cold brew production at the Wilmington Facility.

79. Mahoney's negligence consisted of, but was not limited to, the following:

a. Brewing cold brew that was not fit for human consumption;

b. Missing production targets;

c. Missing production deadlines; and

d. Missing delivery deadlines.

80. It was reasonably foreseeable that the negligent acts of Mahoney would cause harm to LeanBox.

81. As a direct result of the acts, omissions and conduct of Mahoney, LeanBox suffered damages and continue to suffer damages.

**COUNT SEVEN**

**UNJUST ENRICHMENT**
**(Lean and Local LLC d/b/a LeanBox v. John Mahoney and Atomic Café, Inc.)**

82. Counterclaim plaintiff LeanBox repeat the allegations of paragraphs 1 through 81 of this counterclaim and incorporate them by reference as if fully set forth herein.

83. As described in paragraphs 11 and 12 above, LeanBox contributed significant capital to counterclaim defendants Atomic Café to purchase equipment for the Salem Facility where Atomic brewed its cold brew coffee.

84. As described in paragraph 23 above, LeanBox contributed 100% of the capital to build out the Wilmington Facility where Atomic brewed its cold brew coffee.

85. As described in paragraph 24 above, LeanBox then purchased Atomic cold brew that had been brewed at the Salem and Wilmington Facilities at above-market rates between April 2016 and September 2017.

86. Atomic has been unjustly enriched by LeanBox to the detriment of LeanBox and Leanbox is entitled to monetary relief.

**COUNT EIGHT**

**VIOLATION OF M.G.L. C. 93A, §11**
**(Lean & Local LLC d/b/a LeanBox v. Atomic Café, Inc.)**

87. Counterclaim plaintiff LeanBox repeat the allegations of paragraphs 1 through 86 of the Counterclaim and incorporate them by reference as if fully set forth herein.

88. Counterclaim defendants engaged in a pattern of unfair and deceptive trade practices and unfair methods of competition. In particular, counterclaim defendants' unfair and deceptive trade practices and unfair methods of unfair competition include, but are not limited to false statements and commercial disparagement that LeanBox: (1) was not properly licensed to make cold brew; (2) operated an unsafe and unsanitary brewing facility; and (3) acted in bad faith in terminating its relationship with him, intended to drive LeanBox out of the cold brew market, or create barriers to entry for LeanBox.

**WHEREFORE,** the counterclaim plaintiffs pray:

1) LeanBox be awarded the full amount of its damages resulting from counterclaim defendants' intentional misrepresentations in Count One;

2) LeanBox be awarded the full amount of its damages resulting from counterclaim defendants' negligent misrepresentations in Count Two;

3) LeanBox be awarded the full amount of its damages resulting from Atomic Café, Inc.'s breach of the implied warranty of fitness in Count Three;

4) Counterclaim plaintiffs be awarded the full amount of its damages resulting from counterclaim defendants' interference with advantageous relations in Count Four;

5) Counterclaim plaintiffs be awarded the full amount of its damages resulting from counterclaim defendants' injurious falsehood in Count Five;

6) Counterclaim plaintiffs be awarded the full amount of its damages resulting from John Mahoney's negligence in Count Six;

7) LeanBox be awarded the full amount of its damages resulting from counterclaim defendants' unjust enrichment in Count Seven;

8) LeanBox be awarded the full amount of its damages resulting from counterclaim defendants' violation of M.G.L. c. 93A with multiple damages, costs and attorneys' fees;

9) The Court award counterclaim plaintiffs such further award as this Court deems just and proper.

**JURY DEMAND**

**DEFENDANTS/PLAINTIFFS-IN COUNTERCLAIM DEMAND TRIAL BY JURY ON ALL COUNTS SO TRIABLE**

Defendants,

KYLE ROY, PETER ROY, COLD BREW VENTURES, LLC, and LEAN & LOCAL, LLC, d/b/a LEANBOX and d/b/a GRIND or GRIND COFFEE

*/s/ Heather M. Gamache*

Joseph P. Messina, BBO # 559328
jmessina@princelobel.com
Thomas M. Elcock, BBO # 549027
tmelcock@princeloble.com
John F.X. Lawler, BBO # 546910
jlawler@princelobel.com
Heather M. Gamache, BBO# 671898
hgamache@princelobel.com
Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: 617 456 8000
Fax: 617 456 8100

DATED: December 15, 2017

**CERTIFICATE OF SERVICE**

I, Heather M. Gamache, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 15, 2017. A paper copy will be served on all non-registered users of ECF, if any.

*/s/ Heather M. Gamache*